[668 NYS2d 160]

In the Matter of NORMAN INGBER, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, January 20, 1998

**APPEARANCES OF COUNSEL**

*Raymond Vallejo* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Michael S. Ross* of counsel *(LaRossa, Mitchell & Ross,* attorneys), for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent Norman Ingber was admitted to the practice of law in New York by the Second Judicial Department on June

25, 1969. At all times relevant herein, respondent has maintained an office for the practice of law within the First Judicial Department.

Respondent was charged in an indictment, filed June 23, 1995 in the Supreme Court, New York County, with commercial bribing in the first degree and scheming to defraud in the first degree, in violation of Penal Law §§ 180.03 and 190.65, respectively. On or about July 16, 1996, respondent pleaded guilty to the lesser included offense of commercial bribing in the second degree, an A misdemeanor, in violation of Penal Law § 180.00. On October 4, 1996, respondent was sentenced to an unconditional discharge, a fine of $2,500 and 100 hours of community service.

By order entered December 13, 1996, this Court granted the petition of the Departmental Disciplinary Committee for an order determining that the crime of which respondent has been convicted is a serious crime as defined by Judiciary Law § 90 (4) (d); and directing respondent to show cause before the Departmental Disciplinary Committee, which shall thereupon hold a hearing and issue a report and recommendation to the Court, why a final order of censure, suspension or disbarment should not be made. On May 27, 1997, a hearing was held to determine the appropriate sanction.

In 1993, respondent was retained by Shaheen Daneshuar in connection with a fall sustained when he tripped over a mat in a commercial building and seriously injured himself. This personal injury case proceeded normally through discovery, until respondent unlawfully paid money to speed up the settlement process.

In the summer of 1994, respondent was approached by Edward Quigley, with whom he had prior dealings when Quigley worked as an adjuster for Liberty Mutual Insurance Company. Quigley informed respondent that he had started an adjustment company called the "Q Adjusting Service" and offered to consult with the adversary's adjuster to expedite the case. Respondent did not know at the time that Quigley's services were not legitimate. Quigley advised respondent that he was familiar with the Daneshuar matter, defended by the AIG Insurance Company, and asked how much money respondent wanted to settle the matter. When respondent indicated that he wanted $125,000, Quigley informed respondent that the adjuster would settle for, at most, $75,000. Respondent agreed that this was a fair settlement, provided that outstanding liens were also paid. Shortly thereafter, Quigley telephoned respon-

dent to say that he had spoken to the insurance company's in-house adjuster, who agreed to pay $75,000 and one third of the outstanding medical expense liens (totalling $79,600). Respondent told Quigley that he considered the case settled and agreed to mail the releases to the insurance company.

Shortly thereafter, Quigley telephoned respondent and told him that he wanted three percent of the gross settlement. Quigley told him that part of the three percent would be used to pay his own expenses, and respondent inferred that Quigley also intended to pay someone in the insurance company who had expedited the case. Respondent understood that this money was strictly to expedite the case, not to enhance the actual settlement. Respondent alleged that he was surprised, but agreed.

With regard to respondent's crime, the Hearing Panel found that it constituted a single act, was aberrational and was not part of any pattern or practice on respondent's part. Quoting the Assistant District Attorney in charge of the case, the Hearing Panel noted that he had reached the same conclusion.

The Hearing Panel also took into account respondent's mitigating evidence. Respondent had always been candid with the Committee and the Panel, and he demonstrated sincere remorse. At about the same time as his crime, respondent's wife was suffering from alcoholism and his stepson was having serious behavioral problems. Respondent also presented extensive evidence regarding his good reputation in the community for truthfulness, honesty and integrity. Seven character witnesses testified on his behalf, and respondent introduced 23 character letters. The Panel noted, "These letters similarly provided the Panel with strong proof concerning respondent's personal and professional commitments to those around him, to his clients and to the judicial system."

The Panel concluded that public censure was an appropriate sanction because (1) respondent's misconduct relates to a single act; (2) the payment of the gratuity was not for the purpose of enhancing the settlement value of the case, but merely to expedite its handling; (3) the transaction was never completed and no money ever changed hands; (4) there are substantial mitigating circumstances; and (5) there are no aggravating factors.

The Departmental Disciplinary Committee now moves for an order pursuant to 22 NYCRR 603.4 (d) and 605.15 (e) (2) confirming the Hearing Panel's findings of fact, conclusions of law and recommendation as to sanction. By cross motion, re-

spondent also moves for an order confirming the Hearing Panel's findings of fact, conclusions of law and recommendation as to sanction.

The Hearing Panel's findings of fact are supported by the evidence. The conclusion that respondent's crime constituted a single aberrational act is not only supported by respondent's testimony, but by the Assistant District Attorney who prosecuted him. Additionally, it is clear that respondent was to have paid the unlawful gratuity merely to expedite the settlement and not to enhance it. Furthermore, respondent presented substantial mitigating circumstances in that he was experiencing considerable stress due to his wife's alcoholism and his stepson's behavioral problems. In contrast, the Departmental Disciplinary Committee presented no aggravating circumstances. While we view the action of respondent as serious, we are of the opinion, under the circumstances, that a public censure should be imposed (*Matter of Goffen*, 103 AD2d 197).

Accordingly, the Departmental Disciplinary Committee's motion and respondent's cross motion to confirm the Hearing Panel's findings of fact and conclusions of law and to impose the sanction of public censure upon respondent are granted.

MILONAS, J. P., ELLERIN, WALLACH, NARDELLI and RUBIN, JJ., concur.

Motions granted, the Hearing Panel's findings of fact and conclusions of law confirmed, and respondent publicly censured.